IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAYNE VADERS, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-cv-1352 |
| | : | |
| COMMONWEALTH OF PA | : | |
| DEPARTMENT OF AGRICULTURE | : | |
| et al. | : | |
| Defendants | : | |

## OPINION

**Stengel, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**March 17, 2010**

　　　　The Philadelphia Park Racetrack Board of Stewards revoked Jayne Vaders's horse racing license. The Pennsylvania Horse Racing Commission and the Pennsylvania Commonwealth Court affirmed the revocation. Ms. Vaders alleges the Commonwealth of Pennsylvania Department of Agriculture, Pennsylvania Horse Racing Commission, Philadelphia Park Racetrack Board of Stewards,[1] Sam Boulmetis, Jr., John P. Hicks, and John Gerweck discriminated against her because of her gender in violation of 42 U.S.C. § 1983.

　　　　Ms. Vaders's claims against the Pennsylvania Department of Agriculture and Pennsylvania Horse Racing Commission are barred because the entities have sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution. To the extent Mr. Boulmetis, Mr. Hicks, and Mr. Gerweck are sued in their official capacity, the

---

[1] Although named as a defendant, the Philadelphia Park Racetrack Board of Stewards is not a legal entity and was not served.

Eleventh Amendment bars the claims. In addition, to the extent Mr. Boulmetis, Mr. Hicks, and Mr. Gerweck are each sued in his personal capacity, the claims are barred because the Commonwealth Court of Pennsylvania decided the issue.

I.  **BACKGROUND**

Jayne Vaders trained and owned numerous horses stabled at Philadelphia Park Racetrack. Complaint at ¶ 10, Vaders v. Pa. Dept. of Agriculture, No. 09-1352 (E.D. Pa. filed Mar. 30, 2009). Consistent with Racing Commission procedures, Ms. Vaders's horses were subject to drug testing following a race. Complaint at ¶ 14. Following a February 4, 2007 race, a class III drug was found in the system of a horse owned by Ms. Vaders, but it could not be determined whether the drug was administered on the day of the race. Id.; Vaders v. Pa. State Horse Racing Comm'n, 964 A.2d 56, 57-58 (Pa. Commw. Ct. 2009). A class III drug is permitted and commonly used during training, but is not allowed in a horse's system on race day. Complaint at ¶ 14.

On several prior occasions, the Board of Stewards disciplined Ms. Vaders through license suspension and a fine for administration of drugs to her horses. Id. at ¶ 15. On April, 13, 2007, Ms. Vaders's license was revoked. Id. at ¶ 16. Her license was revoked pursuant to 58 Pa. Code § 163.303, which calls for the revocation of a license after two positive drug tests. Id. at ¶ 17. This provision had never been invoked before, and has not been invoked since. Complaint at ¶18. Rather, owners and trainers typically receive a

2

fifteen to thirty day suspension and a fine for violating the provision. Id.

Ms. Vaders appealed the decision of the Board of Stewards to the Commission and lost. She appealed the Commission's decision to the Pennsylvania Commonwealth Court. In the Commonwealth Court, Ms. Vaders argued the Board of Stewards selectively enforced the provision against her. Vaders, 964 A.2d at 57, 59. The Commonwealth Court relied on the testimony of a steward, who stated the Board of Stewards had never before enforced the section because "they never had a trainer or owner with as many violations as [Ms.] Vaders." Id. at 60. The court noted Ms. Vaders had received a warning before her license was revoked. Id. The Commonwealth Court found the Stewards "did not abuse their discretion" when they revoked Ms. Vaders's license.[2]

Ms. Vaders alleges the procedures were selectively enforced against her based on her gender. Id. at ¶ 20. Defendants filed a motion to dismiss Ms. Vaders's complaint. For the reasons set forth below, I will grant defendants' motion.

---

[2] In her state court appellate brief, Ms. Vaders argued the regulation was selectively enforced and the Commission failed to cite supporting evidence. Brief of Appellant, Vaders v. Pa. Horse Racing Comm'n, 2008 WL 6722249, at *18-20 (Pa. Commw. Ct. filed July 14, 2008). She claimed there is no evidence other trainers did not have more positive results than her, or that an owner with less positive results did not have worse violations because of the type of drug used. Id., at *19.

Ms. Vaders did not conduct discovery in state court. The Commonwealth Court, however, found due process was not violated because the failure to conduct discovery was due to Ms. Vaders's failure to subpoena documents. Vaders, 964 A.2d at 59. In addition, although the Commonwealth Court can remand a case to the Commission if it finds the basis for the challenges are not part of the record or the petitioner could not have raised the contention in the administrative proceedings, Tulio v. Commw, State Horse Racing Comm'n, 470 A.2d 645, 648 (Pa. Commw. Ct. 1984) (citing 42 Pa. Cons. Stat. § 706), it did not remand Ms. Vaders's case.

## II.     DISCUSSION

### A.     Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984). A court may consider public records and other indisputable authentic documents when reviewing a motion to dismiss. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004) (court may consider indisputable authentic documents); S. Cross Overseas Agencies, Inc. V. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (court may consider public records, including judicial proceedings).

### B.     Ms. Vaders's Claim Against the State Agencies

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

4

Foreign State." The United States Supreme Court has held "despite the limited terms of the Eleventh Amendment, a federal court could not entertain a suit brought by a citizen against his own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (quoting Hans v. Louisiana, 134 U.S. 1, 15 (1890)). "[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in [Article III]." Id.

A state may waive its sovereign immunity, and consent to be sued in federal court. Pennhurst State Sch. & Hosp., 465 U.S. at 99 (citing Clark v. Barnard, 108 U.S. 436, 447 (1883)). The State's consent, however, must be "unequivocally expressed." Id. (citing Edelman v. Jordan, 415 U.S. 651, 673 (1974)). In addition, although Congress can abrogate the Eleventh Amendment immunity pursuant to the Fourteenth Amendment, Congress must provide "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" Id. (quoting Quern v. Jordan, 440 U.S. 332, 345 (1979)).

Pennsylvania has not consented to suit in federal court. 42 Pa. Cons. Stat. § 8521(b).[3] In addition, Section 1983 does not abrogate the States' Eleventh Amendment immunity. See Quern, 440 U.S. at 340-46 (refusing to find "Congress intended by the

---

[3] 42 Pa. Cons. Stat. § 8521(b) provides: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."

5

general language of § 1983 to override the traditional sovereign immunity of the states");[4] Hurst v. City of Rehoboth Beach, 288 Fed. Appx. 20, 25 (3d Cir. 2008) (noting "[a]lthough Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983").

The Pennsylvania Department of Agriculture and the Pennsylvania Horse Racing Commission are state agencies. Tulio, 470 A.2d at 648 n.4; see 4 Pa. Stat. § 325.201 (establishing the State Horse Racing Commission as a "departmental administrative commission within the Department of Agriculture."); 42 Pa. Cons. Stat. Ann. § 8501 (defining "Commonwealth party" to include a "commonwealth agency and any employee thereof."). Therefore, because Pennsylvania has not consented to suit, and section 1983 does not abrogate Eleventh Amendment immunity, the Eleventh Amendment bars Ms. Vaders's claims against the Commonwealth of Pennsylvania, Department of Agriculture, and the Horse Racing Commission. See Tulio, 470 A.2d at 648.

### C. Ms. Vaders's Claim Against the Individual Defendants

"Absent waiver by the State or valid congressional override," the Eleventh Amendment bars a damages action against state officials in their official capacities. See

---

[4] The Court in Quern, 440 U.S. at 345, reasoned "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which show that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."

Kentucky v. Graham, 473 U.S. 159, 165-67, 167 n.14, 169 n.17 (1985) (holding Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity").[5] Because Ms. Vaders requests damages, not injunctive relief, to the extent Ms. Vaders sues Mr. Boulmetis, Mr. Hicks, and Mr. Gerweck in their official capacities, the Eleventh Amendment bars her suit. See Graham, 473 U.S. at 165-67, 167 n.14, 169 n.17.

Moreover, I find the claims against the stewards in their personal capacities are barred by collateral estoppel. Under Pennsylvania law, collateral estoppel applies where: "(1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person in priv[ity] against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment." Spyridakis v. Riesling Group, Inc., 2009 WL 3209478, at *4 (E.D. Pa. Oct. 6, 2009) (quoting Office of Disciplinary Counsel v. Kieswetter, 889 A.2d 47, 50-51 (Pa. 2005)). "[T]he party seeking to effectuate [collateral] estoppel, has the burden of demonstrating the propriety of its application." Spyridakis, 2009 WL 3209478, at *5 (quoting Chisholm v. Defense Logistics Agency, 656 F.2d 42, 50 (3d Cir.1981)).

---

[5] Graham reasoned "a judgment against a public servant in his 'official capacity' imposes liability on the entity that he represents . . . ." Graham, 473 U.S. at 169 (quoting Brandon v. Holt, 469 U.S. 464, 471 (1985)).

7

The issues raised in Ms. Vaders's state court litigation are identical to the issues raised in this case. "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000) (quoting 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4425, at 253 (1981)). "To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be substantial." Di Loreto v. Costigan, 600 F. Supp. 2d 671, 689 n.12 (E.D. Pa. 2009) (quoting Raytech Corp. v. White, 54 F.3d 187, 191 (3d Cir. 1995)).

The same general legal rules govern the cases. To establish a violation of section 1983 for denial of equal protection, Ms. Vaders would have to demonstrate she "received different treatment from that received by other individuals similarly situated." Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing Andrews v. City of Phila., 865 F.2d 1469, 1478 (3d Cir. 1990)). Because her equal protection violation is based on gender discrimination, Ms. Vaders must establish the different treatment was based on her gender. Id.[6]

Similarly, to establish a selective enforcement claim, the claim raised in state court, Ms. Vaders had to demonstrate: 1) other similarly situated owners/trainers did not have their license revoked "despite their non-compliance with the [provision] and 2) that

---

[6] This standard is identical to the prima facie case plaintiffs must establish in Title VII cases. Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997).

8

this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993)).[7]

In addition, the facts of both the federal and state cases are indistinguishable. The Board of Stewards revoked Ms. Vaders's license following the positive drug test of her horse on the day of a race.[8] Ms. Vaders raised challenges to this revocation in the state system to both the Commission and the Commonwealth Court. She challenges the same revocation here.[9]

The issues raised in both the state and federal claims require that the plaintiff establish a discriminatory purpose. The Pennsylvania Commonwealth Court specifically

---

[7] The Pennsylvania Commonwealth Court does not cite the selective enforcement standards, but does state Ms. Vaders claimed the regulation was selectively enforced against her. Vaders, 964 A.2d at 57, 59.

[8] Ms. Vaders's complaint maintains she was disciplined on prior occasions, but did not specify the number of occasions. See Complaint at ¶ 15. At the state level, a steward testified Ms. Vaders had five to six positive tests between 2003 and 2007. Vaders, 964 A.2d at 60.

[9] In state court Ms. Vaders argued the Board of Stewards selectively enforced the provision against her, contending "it had never utilized that regulation to revoke a license in the past." Vaders, 964 A.2d at 59; See Brief for Appellant, Vaders, 2008 WL 6722249, at * 18. Similarly, her federal complaint alleges the code provision "had never been invoked against any owner or trainer before or since" its invocation against Ms. Vaders. Complaint at ¶ 17. In addition, in state court she argued the Board of Stewards did not establish other trainers did not have more positive test results than Ms. Vaders, or other trainers did not have worse violations than Ms. Vaders because of the drug type used. Brief of Appellant, Vaders, 2008 WL 6722249, at *19. Here, she argues "there are numerous other male owners/trainers still licensed who have had more positive test results than [Ms. Vaders], and which male owners/trainers who have only been given reprimands and/or fines/suspensions." Complaint at ¶ 19.

9

addressed the selective enforcement claim, which required a determination of whether the decision was based on a discriminatory purpose. The court found the Stewards did not abuse their discretion when they revoked Ms. Vaders's license. Vaders, 964 A.2d at 60.

Ms. Vaders alleges her state court claim was a procedural due process claim, not a substantive due process claim.[10] However, regardless of how Ms. Vaders classifies her claims, the general legal rules governing the equal protection and selective enforcement issues are identical for the purpose of collateral estoppel.

The Commonwealth Court decision was a final adjudication on the merits. Collateral estoppel is asserted against Ms. Vaders, who was a party in the prior adjudication. Ms. Vaders had a full and fair opportunity to litigate the issue in question in a prior action because Ms. Vaders raised her selective enforcement claim in state court, and the state court addressed the claim. In addition, the Commonwealth Court determined she received notice and had an opportunity to be heard. Vaders, 964 A.2d at 60. The determination by the Commonwealth Court that the decision was not based on a discriminatory purpose was essential to its finding the regulation was not selectively enforced against Ms. Vaders. See Hill, 411 F.3d at 125 (stating elements plaintiff must prove in selective enforcement cause of action, including the decision must be "based on an 'unjustifiable standard'" (quoting Holder, 987 F.2d at 197)).

---

[10] In state court Ms. argued "the Commission violated her due process rights by refusing her attorney's request for discovery which would have provided mitigating evidence, by selectively enforcing 58 Pa. Code § 163.316 against her, and by redistributing her horse's purse money without first affording her a hearing." Vaders, 964 A.2d at 58.

Accordingly, collateral estoppel bars Ms. Vaders's claims against Mr. Boulmetis, Ms. Hicks, and Mr. Gerweck in their personal capacities.

An appropriate order follows.